**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**DONNA SUE GABLE,**

      **Plaintiff,**

**-vs-**                    **Case No. 6:08-cv-1932-Orl-18DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

   This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for social security disability benefits. For the reasons set forth herein, it is **recommended** that the decision be **AFFIRMED.**

### *PROCEDURAL HISTORY*

   Plaintiff applied for Title II disability insurance benefits ("DIB") and Title XVI Supplemental Security Income benefits ("SSI"), alleging that she became unable to work on December 31, 2005 (R. 76-80, 453-56). Plaintiff's applications were denied initially and upon reconsideration, and Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ") (R. 457-81). On May 21, 2008, the ALJ issued an unfavorable decision (R. 17-29). The ALJ determined that Plaintiff was insured for Disability Insurance Benefits only until March 31, 2006 (R. 20), and concluded, for purposes of both DIB and SSI, that Plaintiff was not under a disability from December 31, 2005 through the date of the decision.

   Plaintiff requested Appeals Council review of the ALJ's decision, which was denied (R. 10-16), making the ALJ's decision the final decision of the Commissioner. Upon receiving an extension

of time from the Appeals Council, Plaintiff, appearing *pro se,* filed the instant action (Doc. No. 1). The matter has been briefed and referred to the undersigned for issuance of a Report and Recommendation.

### *NATURE OF CLAIMED DISABILITY*

Plaintiff claims to be disabled due to bipolar disorder and pain in her neck, shoulders and lower back (R. 46, 52-54).

*Summary of Evidence before the ALJ*

At the time of the ALJ's decision, Plaintiff was 45 years old, and had obtained a GED in 2005 (R. 462-63, 105). Plaintiff reported past relevant work as a receptionist/scheduler, stock clerk, and doing odd jobs such as housekeeping (R. 91, 93, 99, 464-65).

Treatment records for mental health issues indicate that in September 2004, prior to the alleged date of onset, Plaintiff presented to Santiago De Los Angles, M.D. of Lakeside Alternatives, and was diagnosed with bipolar disorder and cocaine abuse by history (R. 265). On examination, she was calm and cooperative, her mood was slightly depressed, affect was congruent and she denied any suicidal or homicidal thoughts. *Id.* Her thoughts were organized, without delusions or hallucinations, and she was fully oriented. Memory was adequate and her insight and judgment were fair. She was assessed with a Global Assessment of Functioning ("GAF") of 55. *Id.* That same day, Dr. De Los Angles completed a check box form, indicating that Plaintiff "was unable to work" and this condition was "permanent" (R. 396). She continued treatment with Lakeside through April 11, 2005, where she reported doing well on her medications, with an improved GAF of 60 (R. 255).

Plaintiff began treating with psychiatrist Raju B. Nandimandalam, M.D. on June 6, 2005 (R. 300). On August 12, 2005, Dr. Nandimandalam reported that Plaintiff has "no serious mental status abnormalities" and "[n]either depression nor mood elevation is evident" (R. 312). Plaintiff exhibited

appropriate behavior; her thinking was logical; memory was intact and Plaintiff was oriented. Dr. Nandimandalam found "no signs of anxiety," "no signs of cognitive difficulty," "a normal attention span was in evidence" and "insight and judgment are intact" (R. 312). On September 1, 2005, however, on a check box form, Dr. Nandimandalam indicated that Plaintiff "was unable to work" and this condition was "permanent" (R. 311).

On October 26, 2006, Plaintiff was evaluated by Jeanne Gifford, M.D. (R. 360). On mental status examination, her mood was agitated and affect appropriate. She was alert and oriented and was diagnosed with bipolar disorder and assessed with a GAF of 55-60 (R. 361).

From July 20, 2007 through February 21, 2008, Plaintiff was treated by Najib Kirmani, M.D. of Intervention Services (R. 431-42). On July 31, 2007, Plaintiff reported that she had "just come back from vacation at Sarasota" and had not been taking her lithium consistently (R. 441). In August 2007, she reported cocaine use (R. 440), and her cocaine abuse was noted in other treatment notes (R. 436, 439). On October 25, 2007, Plaintiff reported abusing cocaine 20-30 times a month, but that she had not used in three weeks (R. 436). Her GAF was set at 48, with her provider noting that Plaintiff had cancelled or not shown for her appointments, and had attended only three counseling sessions since July. *Id.*

The record also includes reports from examining and non-examining state agency consultants, with respect to Plaintiff's mental health condition. On August 14, 2006, Plaintiff was evaluated by Nancy S. Hinkeldey, Ph.D. (R. 323-26). Dr. Hinkeldey found Plaintiff's thought processes to be generally logical and coherent, with no indication of delusions or psychotic thought process (R. 324). Plaintiff was oriented adequately, with adequate judgment and insight and intact memory. Overall "no significant cognitive deficits are noted." (R. 324). Plaintiff reported that she could do usual home tasks and could drive, and it was noted that Plaintiff was able to complete a course of study and obtain

a GED in 2005 as a full time student (R. 325). Plaintiff was assessed with Bipolar Disorder and cocaine dependence, in early remission. Dr. Hinkeldey concluded that Plaintiff's functional ability "appears marginal at the present time" with symptoms of Bipolar Disorder that are improved with treatment, and opined that "[s]he may be capable of limited employment" (R. 326).

On September 21, 2006, agency psychologist Eric Wiener, Ph.D., opined that Plaintiff is mildly limited in social functioning, and moderately limited in activities of daily living, and maintaining concentration, persistence, or pace (R. 341).

In August 2007, Plaintiff presented to William W. Austin, Psy.D. for a consultative examination (R. 375). On mental status evaluation, her thought process was intact, and attention and concentration were sustained throughout the evaluation (R. 376). Her mood was dysthymic and her affect was mood congruent. Judgment, impulse control and insight were limited. *Id.* Dr. Austin noted that Plaintiff had admitted to using crack cocaine as recently as the day before the evaluation and Dr. Austin opined that Plaintiff's functional ability "appears limited based on mental illness and substance abuse" (R. 376).

In September 2007, reviewing agency psychologist Kevin Ragsdale, Ph.D., noted mild limitations in activities of daily living, and moderate limitations in social functioning and maintaining concentration, persistence, or pace (R. 392). Dr. Ragsdale opined that Plaintiff "retains the social and cognitive skills essential to completing simple, routine tasks" (R. 394).

The record contains evidence with respect to Plaintiff's complaints of orthopedic pain. In January 2006, Plaintiff presented to Alex C. Perdomo, M.D. for a consultative physical examination (R. 284). In reporting her history, Plaintiff denied any recreational drug use (R. 284). Dr. Perdomo noted that Plaintiff appeared to be in no acute distress, and that she ambulated without difficulty or assistive device. She exhibited a full range of motion in lower extremities; a limited range of motion

in shoulders, neck, and back; had a negative straight leg raise test and normal neurological/mental status exam (R. 284-85). Dr. Perdomo felt that Plaintiff could (1) lift/carry up to 15-20 pounds frequently; (2) stand or walk up to six hours, sit up to eight hours, in an eight-hour workday with normal breaks; and (3) should avoid repetitive bending (R. 285).

Following a motor vehicle accident on September 15, 2006, Plaintiff treated with a chiropractor, Vincent Preziosi, for three months (R. 403-25). An MRI performed on November 1, 2006 showed disc bulge at C4-C5 and C5-C6 with anterior thecal sac indentation with mild encroachment. There was herniated nucleus pulposus at C6-C7 level and disc bulge at C7-T1 levels. There was incomplete disc herniation with effacement of the ventral epidural fat at L4-L5 with facet arthropathy and herniated nucleus pulpous at L5-S1 level (R. 428-29). At the conclusion of the treatment, Plaintiff was deemed to be 70-80% improved (R. 404).

In July 2007, Plaintiff returned to Dr. Perdomo for a second evaluation (R. 362). She complained of being unable to sit, stand or walk for more than 20 or 30 minutes because of severe lower back pain. Plaintiff was observed to be (1) in no acute distress, walking without difficulty or use of an assistive device; (2) with a full range of motion in lower extremities, limited range of motion in shoulders, neck, and back, with pain; (3) negative straight leg raise test; and (4) normal neurological/mental status exam (R. 362-63). Dr. Perdomo noted that he did not have MRI records for review, but opined that Plaintiff could: (1) occasionally lift/carry up to 20 pounds; (2) stand, sit, or walk for 3-4 hours in an eight-hour workday with normal breaks; and (3) should avoid repetitive bending, stooping, or crouching (R. 363).

On September 21, 2007, Plaintiff presented to orthopedist William S. Cox, M.D. (R. 428-30). Dr. Cox reviewed the MRI studies and performed a physical, noting tenderness in the neck with restriction of extension of the cervical spine; present and equal reflexes with no motor weakness or

sensory deficit of the upper extremities; tenderness in the lower lumbar area with mild restriction of the lumbar spine; a negative straight leg test, and no weakness or sensory deficit of the lower extremities (R. 429-30). Upon review of the MRI studies, Dr. Cox assessed multiple cervical disc protrusion and herniation with minimal neurological involvement and herniated lumbar disc, two levels "with minimal neural involvement" (R. 428). Dr. Cox noted that Plaintiff seemed to be "fairly comfortable right now" and advised for a continuation of conservative treatment, noting that Plaintiff "should be performing sedentary type work only." *Id*.

Non-examining state agency consultants also provided reports that did not indicate disabling limitations (R. 291, 346).

In addition to the treatment records, the records and opinions of examining and non-examining consultants, the administrative record also includes numerous forms and reports from Plaintiff and her mother, and Plaintiff and her aunt appeared at her hearing and testified. A Vocational Expert ("VE") also appeared and testified. Based on a review of the evidence, the ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work as follows: (1) occasionally lift/carry up to 20 pounds; (2) sit, stand, or walk for 3-4 hours in an eight-hour workday with normal breaks; (3) avoid repetitive bending, stooping, or crouching; and (4) perform simple, routine, and repetitive tasks (R. 26 Finding 5). Based on the testimony of the VE, the ALJ determined that Plaintiff was capable of performing her past relevant work as a housekeeper and was therefore, not disabled (R. 29).

## *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The

Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *ISSUES AND ANALYSIS*

As Plaintiff is appearing *pro se,* the Court construes her filings liberally, in order to ascertain the nature of her objections to the administrative decision under review. In her brief, it appears that Plaintiff objects to the finding that she can return to her past relevant work and disagrees with the findings regarding her pain and RFC. In apparent support of her argument, although she does not explicitly refer to them in her brief, Plaintiff has attached to her complaint what appear to be medical records, some of which are not included in the administrative record. The first record which was not included is dated April 28, 2008, which is prior to the date of the ALJ's decision. Two other records post date the May 21, 2008 decision: one dated July 1, 2008 (after the date of the ALJ's decision but prior to the Appeals Council denial of review) and the other dated October 1, 2008 (after the Appeals

Council denial) (Doc. No. 1, exhibits to Complaint).  All of the "new" records consist of treatment notes from Dr. Cox, the orthopedist.  The Court must address the status of these records, and whether remand to the Commissioner is required, prior to undertaking an analysis on the merits.

### *Remand is not required*

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086 (11th Cir. 1996).  To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  *Jackson*, 99 F.3d at 1090-91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726 (11th Cir. 1983).

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: 1) that there is new, non-cumulative evidence; 2) that the evidence is material – relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3) there is good cause for failure to submit the evidence at the administrative level.  *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994).  A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant.  *See Ingram v. Comm'r of Soc. Sec.*

*Admin*., 496 F.3d 1253, 1260-61 (11th Cir.2007). However, the new evidence must relate back to the time period on or before the date of the ALJ's decision. See 20 C.F.R. § 404.970(b); *Barclay v. Comm'r of Soc. Sec. Admin*., 274 Fed. Appx. 738, 743-44 (11th Cir .2008).

Initially, the Court notes that Plaintiff's new evidence was presented for the first time to this Court. Therefore, sentence six is the appropriate standard for determining whether the evidence warrants a remand. *Driver v. Astrue,* 2009 WL 631221, 17 (N.D. Ga. 2009). Applying the above standard, the Court finds that it does not.

The October 2008 report is obviously "new" in that it did not exist at the time of the hearing before the ALJ nor the appeal to the Appeals Council. The April 2008 report and the July 2008 report, however, were in existence, as the ALJ issued her decision in May and Plaintiff filed her request for review two weeks after the July 1, 2008 visit with Dr. Cox. There is no showing on this record as to why Plaintiff did not submit the April report to the ALJ, nor either report to the Appeals Council.

Regardless, there is no showing that any of the reports are "non-cumulative" or "material" and the Court finds no reasonable possibility that the reports would change the administrative result. The April 2008 report indicates that Plaintiff stated that her neck was "doing well," but she was having "some lower back discomfort." Examination revealed tenderness in the lower lumbar spine, but no spasm and good range of motion. Straight leg raising was accomplished fully without pain and deep tendon reflexes were present and equal, with no motor weakness or sensory deficit of the lower extremities. Assessment was identical to that already in the record (R. 428).

The July 2008 report indicates that, on examination, Plaintiff had tenderness in the neck and shoulders, but had full range of motion of the cervical spine with no radicular symptomatology. Deep tendon reflexes were present and equal; and no motor weakness or sensory deficit of the upper

extremities was detected, Although Plaintiff had tenderness in the mid and lower lumbar spine, straight leg raising was accomplished "fully without pain," deep tendon reflexes were present and equal, and no motor weakness or sensory deficit was detected in the lower extremities. The assessment remained identical to that already in the record (R. 428), and it was noted that Plaintiff "does no[t] wish to go to physical therapy stating that she cannot work this into her schedule."

The October 2008 report had similar findings – tenderness without weakness, sensory deficit or atrophy – and assessment remained the same.

As none of the reports presents any new finding, the reports are cumulative. Moreover, the absence of any positive finding other than tenderness, coupled with the benign subjective and objective findings (neck doing well, some lower back discomfort, no or little radicular symptoms, refusal to go to physical therapy) refutes any contention that these records would possibly change the administrative result. Remand is not required.

### *The Merits*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Plaintiff bears the burden of proving that her impairments preclude any past relevant work. 20 C.F.R. §§ 404.1512(c), 416.912(c). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and

past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

Here, the ALJ determined this case at level four, by finding that Plaintiff is capable of performing her past relevant work. Plaintiff challenges this finding, noting that her past work as a housekeeper "requires repetitive bending, stooping and crouching which I am unable to perform." (Doc. No. 17). She states that she is unable to stand for 3 to 4 hours at a time and "there is no way I can lift 20 pounds." *Id.* Plaintiff also contends that she is unable to function at all due to severe pain. The Court reviews the ALJ's decision to determine whether it is supported by substantial evidence and was made in accordance with proper legal standards.

### *The RFC finding*

As set forth above, the ALJ found that Plaintiff had the RFC for light work as follows: (1) lift up to 20 pounds occasionally; (2) sit, stand, or walk for three to four hours in an eight-hour workday with normal breaks; (3) avoid repetitive bending, stooping, or crouching; and (4) perform simple, routine, and repetitive tasks (R. 26, Finding No. 5). Although Plaintiff denies her ability to perform at this capacity, the Court does not determine the issue anew, but looks to the existing record to see if the finding is supported by substantial evidence. The Court concludes that it is so supported.

To the extent the RFC includes exertional limitations, they are consistent with the relatively benign objective findings made by the treating and examining providers summarized above. *See, for example,* Dr. Perdomo's findings (R. 363), and Dr. Cox's findings (R. 428-29). While Plaintiff offers her testimony that she cannot stand or lift, she points to no objective finding that precludes this ability. Indeed, no physician has found Plaintiff to be disabled based on any exertional limitations. While Dr. Cox assessed Plaintiff with disc protrusion and herniation, he noted minimal neurological involvement

and his examination revealed no motor weakness or sensory deficit. The finding is adequately supported.

With respect to non-exertional limitations, Plaintiff contends that her mental illness and pain limits her ability to perform work. At issue, then, is whether the ALJ properly evaluated Plaintiff's allegations of pain and limitations resulting from her mental illness. The Court finds no error.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law,

the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Applied here, the ALJ found that Plaintiff's combination of impairments could reasonably cause pain; however, her statements concerning its intensity, persistence, and limiting effects were not fully credible (R. 28). The ALJ acknowledged Plaintiff's assertions of neck and back pain, but noted the physical examinations have been "essentially normal" (R. 27), with no hospitalizations or emergency treatment, no diminished range of motion or atrophy, no weakness or sensory deficits and no aggressive treatment such as an epidural or facet injections (R. 27-8) (noting, too, that Plaintiff received only treatment with a chiropractor and anti-inflammatory agents). As for mental health limitations, the ALJ acknowledged Plaintiff's affective disorder (bipolar) (R. 22, 27), but noted that she had generally normal mental status exam findings, was able to drive and take care of her personal needs, and was able to function relatively well (with GAF scores of up to 60-70) when compliant with treatment and not under the influence of cocaine (*See* R. 27). These findings are supported by substantial evidence.

The ALJ acknowledged that the record also contains evidence of GAF scores reflecting severe symptoms, but noted that "these assessments were made absent any sustained mental health treatment or long-term benefit from appropriate psychotropic medications" and "some of the medical notes referred to are dated prior to the date the claimant stopped using drugs." (Doc. No. 27). Plaintiff asserts that there is "no evidence that reveals the consumption of cocaine during this time period." Pl.'s Br. at 1. The Court, however, disagrees and finds the ALJ's conclusion to be supported by substantial evidence.

On July 17, 2007, Plaintiff was assessed with a GAF of 50 (R. 366). The treatment notes reflect a diagnosis of cocaine abuse on that date, and Plaintiff admitted to using cocaine on July 4, 2007, for four days (R. 365). She reported drug use on July 20 (GAF of 46) (R. 442) and, on follow up visit on July 31, 2007, Plaintiff reported having just come back from vacation and reported not taking her medication consistently (R. 441). Drug use was noted on examination on August 16, 2007, when Plaintiff presented with a GAF of 46 ("she leaves homes for days at a time, leaving her two young daughters with her parents and indulges in cocaine use") (R. 440); and again in October 2007 ("usage remains at approximately 20-30 x a month"– GAF of 48) (R. 436). In August 2007, Dr. Austin noted that Plaintiff "denied illicit drug use, but later in the evaluation admitted to the use of crack cocaine over the last three months . . . [h]er most recent use was yesterday" (R. 376).[1] As is clear, the record provides ample support for the ALJ's credibility finding with respect to the pain and limitations Plaintiff experiences as a result of her impairments.

In formulating the RFC, the ALJ discredited the opinion of two of Plaintiff's mental health providers with respect to Plaintiff being "unable to work." This determination, too, was adequately supported. Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques,

---

[1] Although not addressed directly by the ALJ or briefed by the parties, Congress amended the statutory definition of disability under the Social Security Act to preclude the award of benefits when alcoholism or drug addiction is determined to be a contributing factor material to the determination that a claimant is disabled. *See* 42 U.S.C. § 423(d)(2). In this circuit, the claimant bears the burden of proving whether he would be disabled if he stopped using drugs and alcohol. *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001). Here, the record supports the ALJ's implicit conclusion that when Plaintiff was compliant with her medications and not under the influence of drugs, she improved substantially.

and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Applied here, Dr. De Los Angles opined that Plaintiff was unable to work in September 2004 and Dr. Nandimandalam opined the same on September 1, 2005. The Court notes that both opinions were rendered prior to the alleged onset date and contain no detailed explanations supporting the opinion.[2] The ALJ rejected this opinion as "overly extreme and inconsistent with the medical evidence in its entirety" (R. 28), noting the relatively normal mental status examinations of record,

---

[2]The opinion is also contradicted by Plaintiff's representation that she did, in fact, work from January to December 2005 (R. 193).

Plaintiff's ability to obtain higher GAF's when not consuming cocaine, and her ability to socialize with family, drive and take care of her personal needs. This statement is supported by substantial evidence. Indeed, as set forth above, the opinions are markedly inconsistent with the providers own treatment notes. There is no error.

### *Step Four*

Plaintiff's final contention is that there is no support for the ALJ's conclusion that she is able to perform her past relevant work as a housekeeper. The record indicates that from January 2005 through December 2005, Plaintiff worked as a housekeeper (R. 193, 464-65). At hearing, the ALJ asked the VE about Plaintiff's past work. He testified that Plaintiff's work as a housekeeper was unskilled, light work (R. 476) and, addressing a hypothetical question which set forth all the limitations included in Plaintiff's RFC, the VE testified that such a hypothetical person could perform past unskilled, light work as a housekeeper (R. 477-78). While Plaintiff may disagree with the VE's conclusion, it is not for this Court to reweigh the evidence. Rather, as noted above, the task of the Court is only to determine whether there was sufficient evidence before the ALJ to support his or her findings.

In this circuit, the ALJ is required to employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)). Here, as set forth above, the ALJ presented a hypothetical based on a RFC that was supportable on the record. As such, reliance on the VE

testimony was appropriate and the testimony provided substantial evidence for the ALJ's conclusion that Plaintiff could perform her past relevant work. No error is shown.

### RECOMMENDATION

For the reasons set forth above, the administrative decision was made in accordance with proper legal standards and is supported by substantial evidence. It is therefore **respectfully recommended** that the decision be **AFFIRMED.** Should this recommendation be adopted, the Court should direct the Clerk to enter judgment accordingly and close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on October 19, 2009.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party-Plaintiff
Courtroom Deputy